Last case of the morning on argument is number 14-51158, Akuna Matata Investments v. I will call it Garrison Limited, Partnership D.B. Yes, Your Honor. May it please the Court. My name is Shannon Dunn. I represent Appellant's Texas NOM Limited Partnership, doing business as Garrison Limited and Texas Mon-ELSI, and like Judge Jones, I will refer to my clients collectively as Garrison. Race judicata requires a prior final judgment on the merits by a court of competent jurisdiction, identity of parties or those in privity with them, and a second action based on the same claims that were raised or could have been raised in the first action. And Judge Ferguson recognized back in 2006 that the first two elements here are undisputed. The only disputed question is whether Akuna's federal lawsuit could have been raised in the Texas State Court before. But what makes race judicata so confusing here is that the specific facts of this case make it really easy to lose the forest for the trees. And the big distraction here is the question of whether the state court actually did or did not end the partnership. And you can see this if you go all the way back to Judge Ferguson's September 2006 order denying Garrison's motion for summary judgment on race judicata. Judge Ferguson wrote, even if the partnership ended at some point in time, nothing in this record indicates when the end might have happened, thus precluding summary judgment. And on the surface, that question seems like it's really important, but it isn't, at least not exclusively. Because Texas's approach to race judicata doesn't just ask if the question at issue in the second lawsuit actually was answered in the first lawsuit. It asks if it could have been or should have been. So under Texas's transactional approach, the only relevant questions are, one, whether Akuna's federal lawsuit to dissolve the partnership arose out of the same subject matter as the state lawsuit. And two, whether dissolution— Let me ask you a question that— Yes, Your Honor. It looks, in this case, a little different way. As I read it, the trial court here, in affirming the state trial court, pointed to the Texas Court of Criminal Appeals opinion. The Texas Court of Appeals, to me, was clear about the type of damage the trial court awarded. And I quote, it elected to award Akuna Matata reliance damages for his reliance on the partnership agreement. And it went on to say, reliance damages seeks to restore the status quo at the time before the contract. Yes, Your Honor. Why isn't that answered in this case? The status quo was if it had not been done, he would—he awarded no damages. The money he gave back was his original investment. And under state law, as I read it, that ends it.       I think it's a good question. I think it's a good question. I think it's a good question. It's a good question. It's a good question when we're talking about all this partnership stuff. I actually agree with you, Your Honor. I'm sure you do. I think restoring the status quo before the partnership does take us back to a place and time when these parties had no dealings with one another. And that's been the argument for the 10 years that this case has been in the federal courts. Akuna says, no, the state court didn't end the partnership. And we say, yes, it did. But whether it did or not, I don't think really matters for the race judicata question. I think if it did, race judicata applies. If it didn't, but it could have, race judicata still applies. Your argument is this is a double recovery. I believe it is, Your Honor, yes. I think that Akuna Matata was not happy with the amount of money that the state court gave it and so it tried to take another bite of the apple in the federal court. And like I've just said, from the very first time that Garrison ever argued this lawsuit was barred by race judicata, Akuna's argument has been, nope, it's not, because the state court didn't end the partnership. Well, the, I mean, an argument here is, for the sake of the other side, that the Texas Revised Partnership Act applies to this partnership because you can't deny that there was a partnership based on the previous state court rulings and that to terminate a partnership, several different things have to happen. Well, to terminate, Akuna's argument has always focused on what you have to do to terminate a partnership judicially. The Texas Revised Partnership Act also provides for several different ways that you can end a partnership. And one of them is if one partner to a two-party partnership withdraws. And it's our position that Akuna did that at least twice. First, in its August 2001 letter, Akuna told Garrison that the partnership was, quote, a totally unsatisfactory situation, end quote. But the damages postdated 2001, though, didn't they? Yes, Your Honor. The damages were awarded, I believe, in 2004. Then it couldn't have been terminated as of 2001. Well, if you remember, the Texas state court findings of fact said these parties had a partnership. It did not, there's no declared . . . That's not, that's not my point at all. My point is you can't rely on the 2001 letter to terminate the partnership because that would have mean they'd have had damages only up to 2001. And the judgment centered in 04 or 05, and it awards damages at, presumably, 04 at that point. Well, the damages that the state trial court awarded were . . . I know that. But it said there, it said that the partnership involved not only the first well, but ongoing wells. The project was still underway in 04. The state trial court also said that Acuna did not present any reliable or credible evidence of profits. Net profits. Net profits, that's correct, Your Honor. But . . . But that doesn't mean it was terminated as of 01, so what's your other proof? My other proof is that Acuna Matata stood up in open court and said the best relief that this court could do is to dissolve this partnership. And to me, that plus the 2001 letter are both crystal clear. We want out. We tried this partnership. It's not working, and we want out. Well, now you have rulings by two federal judges, because I think both Royal Ferguson and Judge Hudspeth ruled against you on that. Yes, Your Honor, they did. But if you look carefully at Judge Ferguson's and Judge Hudspeth's opinion, they both fell into the same confusion that Acuna has fallen in throughout this entire lawsuit. They talked about whether the state court actually did end the partnership. They never really considered the question of whether it could have. And under Texas's transactional approach, we have to ask whether it could have. And I don't understand Acuna's argument that Texas could not have ended this partnership when Acuna stood up in open court and said that's the best relief this court could do. Let me be correct in that. The state trial court, I thought I asked for a petition of the partnership assets and its share of the partnership profits, correct? Yes, Your Honor. The state trial court denied that relief and instead restored the status quo ante by rescinding the partnership and returning them their capital investment. That's essentially, functionally what happened. Yes, Your Honor. It didn't ask for, when did it ask for a partition besides in that one oral statement to the court? It did not, but under Texas law, Your Honor, we can, even if a petition for relief is not expressly in the written pleadings, that issue can be tried by consent under Texas rule of civil procedure 67. If that has been tried by consent, it seems to me the garrison would have put it in the, asked it to go in the judgment or the amended findings of fact, and your trial judge wasn't totally opposed to garrison because the trial judge did do additional and favorable amended findings of fact. Yes, Your Honor. Well, so garrison had to, you know, could have gotten that ruling just as well. If garrison could have gotten that rule in the state court, then that answers the question of whether res judicata applies in the federal court. Well, no, it doesn't because, no, it doesn't, because a suit for breach of a partnership is a completely different thing from termination of the partnership. I think that a suit for breach of partnership can be a totally different thing than a suit for dissolution of partnership, but I don't think it was here. And your only basis for saying that is the 01 letter, which I believe cannot prove that, and the, what was the other thing? The opening statement, Your Honor. Pardon me? The opening statement. Exactly. My basis for that is that ACUNA hasn't pointed to anything different that happened after the state court lawsuit. It didn't argue that garrison committed any new breaches or additional breaches. It didn't argue that these parties tried to make this partnership work and they couldn't do it. It went to the federal court and it said garrison did all of these bad things to us, the exact same bad things it did to us that we argued in the state court trial, and now we want to dissolve the partnership because of those things. And I feel like that gives this court an opportunity to make some really good law and say, if you're suing your partner for breach, obviously there's been a breakdown in your relationship at some point, and so you, the party who is suing, needs to decide at the outset, what do I want to happen? I'm sorry, but I don't know enough about business law and the realities of business to set, to try to set any kind of standard, especially from the federal court, which is operating under the principles of ERIE here. I think that could be a very dangerous holding if you're dealing with Exxon on one side and, you know, Chesapeake Energy on the other, and you've got whole oil fields in dispute. I don't think that it has to be a dangerous holding, Your Honor. I think . . . Well, it's one that's not required. I think that if you're suing your partner, and you are going to argue the . . . I thought, under Texas law, it was pretty well settled. If you sue for rescission of the partnership, that is your money back. You can sue, you can do that, or you can sue for affirmation of the partnership agreement and profits or whatever and so forth going forward or a breach. But I look at the case Foley v. Parler, Texas Court of Appeals, and they just said straight away that the plaintiff has to choose whether he would ask rescission of the partnership money back. And on appeal, the plaintiff argued the trial court was in error in making him choose. The Court of Appeals disagreed. They said the plaintiff was not entitled to rescind the partnership agreement and receive the benefits of the same agreement. The language is, he cannot have it both ways. He cannot retain all the benefits of the transaction, escape all the obligations. If that's the Texas law, then I think that would not pose a risk of any other . . . to Exxon or anybody else. If they're suing for rescission of the partnership, and you get rescission of the partnership, and that's all that was done to happen here. He got his money back and nothing else. And I don't know. I'm not sure where we are. Well, again, I'm not saying that that's necessarily wrong, but the paragraph 20 of the first findings and conclusions says only breach of fiduciary duty, breach of oral partnership, and breach of contract. The court finds that the plaintiff, after allowing for just and lawful offsets and credits, has been damaged and should recover $225,000. And those damages were by operation of Texas law for breach of contract only. They had to have been because Acuna got its attorney's fees. I don't agree with that. It's exactly his capital contribution. I don't disagree with that, but that doesn't . . . anyway. Acuna came to federal court and said, I want to dissolve a partnership in which I don't have any . . . my capital contribution has been returned to me. It came to federal court with all of its capital contribution sitting safely back . . . But isn't it also a principle of Texas law that if you can't ascertain the damages, you can have reliance damages as an alternative? It wasn't . . . that is a principle of Texas law, but here we don't have a situation where we couldn't ascertain the lost profits. But that's exactly what the court found in its amended findings. Plaintiff produced no credible or reliable evidence of net profits of any partnership. And to me, Your Honor, that is a finding that Acuna, which had the burden of proof on the damages that it had requested, did not present any evidence. It's not that it couldn't have done so. It's that it had the opportunity to do so, and it did not. Acuna knew in 2001 that this partnership couldn't work. It said so in its letter. It knew in 2004 that this partnership couldn't work. It told the trial court that. And it . . . this partnership was irretrievably broken before the state court lawsuit. And Acuna knew it. Its federal lawsuit does not allege anything new. It didn't complain that Garrison had committed more breaches or different breaches, or it just told the federal court that it wanted to dissolve a partnership based on the same nucleus of operative facts that it had been complaining about since before it filed the Texas lawsuit. What does the $250,000 represent? It represents Acuna's capital contribution to this partnership, Your Honor. So the result of this is that you made an investment in a partnership, you get your money back, but you get to stay in if it . . . with no other obligations, and if it makes money, you're fine. If not, you're out. I believe . . . I believe that's correct, Your Honor. I don't think we would be standing here if Acuna had gotten its money back and had said the partnership doesn't make any money, the partnership is broken, which is actually what Garrison's expert told the federal court. What obligation, if any, on this contract did the man have as the contract went forward? He invested, but did he have any obligation to make any contributions going forward at all? No, Your Honor. The state court found that the $250,000 capital contribution was Acuna's only obligation. And remember, this was an oral partnership agreement. There's nothing . . . I'm sorry, there's nothing written down about whose obligations or what. All we have is the state court findings, which is that the $250,000 was Acuna's only obligation under the partnership agreement. And Your Honor, my time is almost up. Do you have any additional questions? Not at the moment. Thank you. Thank you. All right. Mr. Youngblood? Mr. Youngblood, I appreciate your argument. So you've got the benefit of not answering the questions. They are great arguments to make. It's nice to be back in New Orleans. My daughter just graduated from Tulane in May, so it's good to be here. I always thought this case would come up while she was still a student, but it just didn't work out that way. It's always better to have a daughter a graduate of. May it please the Court, my name is Benjamin Youngblood, and I represent Acuna Matata Investments Limited. Garrison has raised two principal issues in this appeal. Were Acuna Matata's partnership claims barred by raised judicata, and did the trial court err in its trial procedure? Both of those should be resolved in favor of the Court below. As is well established, Texas follows the transactional approach. The question is, are the claims in case two, do they arise out of the same transaction as the claims in case one? We're all in agreement that there's a prior judgment and they are identical parties, so that's not the focus of the inquiry. The question is, are the claims in case two, do they arise out of the same transaction as the claims in case one? So the questions are, what did the Court below actually do, and did the claims of the two cases arise from the same transaction? Both of those should be resolved against Garrison in this matter. Your argument is you get your money back and you get a free ride on whatever else may come down the road. No, sir. No, sir. You've got to remember in a partnership, okay, from the day that this partnership was formed, and certainly by the time the Court found that it existed, a partnership, the partners have capital accounts, okay? Capital account is a defined term under the Partnership Act, and that defined term is just codified, you know, a century or more of basic partnership law. What the capital account consists of is your initial contribution plus subsequent contributions, those don't apply, plus increases in value, plus, and this is the big one, undistributed net profit. So from the day that partnership was formed, the partners each had a right to undistributed net profits as part of their capital account. Of which there were none. There were no distributions to Acuna Matata of its, but there were distributions to Garrison. I'm sorry, but at the amended findings and conclusions, there was no credible or reliable evidence of net profits of any partnership. That's right. All along in this case, we had a proof problem, because Garrison was in charge of all of the books, and it was difficult for us to get them. So just because we couldn't prove them, doesn't mean that they didn't exist. And that's what's different about the subsequent case. Remember, this is like a marriage where people are getting divorced. If you hold at one point, you'd better, you know, the divorce is going to settle everything then. It didn't make any sense to me, aside from Judge Higginbotham's statement from the Court of Appeals, which says, they return to you what you got, they put you in the position you were in before the contract was entered. Your brief says, why your client filed this suit to judicially dissolve the partnership. Quote, it was fed up with Garrison's intransigence. Now I thought to myself, why would that be? Because Garrison paid the judgment and the attorney's fees and got a release. It doesn't make any sense to me. Here's what the sense is. After it did that, we requested further partnership distributions by letter. Garrison continued to say, we're not partners, you're not entitled to any profit in the company. Okay? Maybe in the state court we couldn't prove what that profit was on that day. Didn't mean that our capital account didn't still include it. Didn't mean that on distribution, that issue had to be addressed on conclusion, on winding up of the partnership. Well, one of the grounds for there not being a partnership for terminating under Texas law is that the majority partner elects to terminate. The majority partner could elect to terminate, and if it elects to terminate Well, isn't that Garrison's position in essence? That it elected to terminate the partnership? Right. Well, it didn't really tell us that. It denied the existence of the partnership. It denied the existence of the partnership all the way. It even denies it today. In its brief, they still say the alleged partnership, if it ever existed. They're still denying the existence of it. I'm still saying, yes, I mean, obviously, fortunately, she did a very smart argument. She didn't deny it today. So as of 2004, when the state judgments entered, we know there was a partnership. That's exactly right. But when they started to deny it right after that, why isn't that a de facto termination? It's not a de facto termination. To wind it up, it requires express will of all Sorry. The clock stopped a few minutes ago. I wasn't watching. Sorry. I apologize. Well, we're going to have to continue. You can see it on your side, too. I mean, not that you should have pointed it out, but, I mean, we lost at least five minutes. I won't go a long time. All right. But what the Partnership Act says is that it can be terminated upon express will of all partners, or a predetermined time or event, or illegality, or judicial decree, sale of substantially all the assets, or notice of a partner coupled with subsequent consent of the partners. Those are the events that require winding up. Is that the TRPA? Yes. I thought I had a different list. 6132B, 8.01. There's a different one. Those are the events that require winding up, Your Honor. There's a different list that require subsequent, it's not No. After termination, there's a list of things that you have to do.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. This one requires winding up in 8.01, 6132, 8.01. I've got it in here somewhere. Okay. I thought that the decision of the majority of the partner was clearly one of those. It's express will of all the partners, I believe Your Honor, or predetermined time or event, or illegality, or judicial decree or substantial sale of all the assets, or notice of a partner coupled with subsequent consent of the parters. And if there's a judicial decree, then the court has to make specific findings. Okay? They're not arguing that there was a judicial decree. I think for the first time what we're seeing here is they're saying that it happened either when they sent that letter. There is a recent Texas case on that point. It's not cited in our brief because I didn't think we would have to face it today. But there's a recent case called Buck v. Palmer from the Texas Supreme Court that specifically says when a letter like that is sent, that's some evidence, but it's not conclusive. So I can cite that if we need to do that, Your Honor. But the point is, even if there's an event of winding up, the partnership continues to exist until it is wound up. That's very clear under the Partnership Act. And because it wasn't ever wound up, the partnership continued to exist. What do you do with this language that Judge Higginbotham was referring to, that the amount of damages put them in the same position they would have been before the contract? Well, I think what Judge — that's from the Texas Court of Appeals. Correct. And I think what that's saying is that as a measure of damages for breach of fiduciary duty — okay? Reliance damages can be a measure of damages for breach of fiduciary duty. Remember, it's still a breach of fiduciary duty finding. It's still a breach of fiduciary duty case. It was tried as a breach of fiduciary duty case. It wasn't ever tried as a case to terminate the partnership. It was tried as a breach of fiduciary duty case all along. And the breach of fiduciary duty that was found was the fact that Garrison had paid itself all of its capital contribution but hadn't paid Acuna any of its contribution. And so, therefore, there was at least reliance damages in regard to that as a measure of the damages for breach of fiduciary duty. You say Garrison had paid its capital contribution. I read something in the briefs that say that Garrison had invested the profit from the first well and put that into later wells. The issue in this case, Your Honor, was that Garrison had drilled a lot of wells in several different counties. The only partnership that we had with them was the ones in one particular county, Colorado County. And so, therefore, the investment of their funds into other nonpartnership wells didn't affect this partnership, okay? It would make sense if we were claiming to have an interest in all of the wells in all of the counties. There were no net profits from the partnership. No, no, no, no, no, no, no, no, no. That's what the amended findings said. It said that we didn't introduce the evidence of them. That's an obligation to produce, not that they didn't exist. And in fact, if you look at the findings of fact, it said that they made substantial net profits. Look at the original findings of fact. I understand that. The court, having considered the request, this is for additional amended findings, makes the following additional. Plaintiff produced no credible or reliable plaintiff of net profits of any partnership between plaintiff and defendant. Right. We couldn't, we didn't produce a dollar amount. We couldn't say there was $20 million worth of net profits because Garrison's records were in such disarray that we couldn't prove that dollar amount. That doesn't mean that they didn't exist. Remember, she didn't strike, she didn't strike the finding of fact in the original findings of fact that said that there were substantial net profits. You assume that the ones that supersede the others. Only if it said amended. These were additional. Note what she said. These were additional findings of fact. No, they say additional findings of fact, not amended. No, it says the court, having considered this request, makes the following additional findings of fact. The last sentence in the first paragraph. I'm leaving the title. I'm sorry. I apologize, Your Honor. I'm saying that was what she actually held. No, the district court, the federal district court, well, they awarded, I guess the damages calculate was a percentage of the $250,000 as a percentage of the $3 million something which came out to be about 8.5% more or less. 8.5%. So what you get is that I buy in for $250,000 and I get my $250,000 back and I get my $250,000     I get my $250,000 back. I get my $250,000 back. I get my $250,000 back. And then later on, later on this guy does finally get a well and I say, hey, wait a minute. I'm entitled to, by the measure of the money I've already gotten back and it got in my bank account, that percentage of profits. Now, there weren't any profits, but if there had been, it would have been quite a victory to say I get all my money back and I also still could get a percentage of the profits and they're calculable by the money I got back.  Isn't that what everybody gets? No. Isn't that what everybody gets into business for? Sorry? Isn't that what everybody gets into business for? You want a return of your investment and you want a return on your investment? Of course. But if that were the case, then you would have had to do your percentage based on the total investment in the later wells, which is somewhat, something like $6 million. No, no. I disagree, Your Honor. That would only be if we were trying to claim an interest in a larger pie. We were only trying to claim an interest in the wells in this one particular county. They drilled wells in several counties around that one county.  Judge Hudspeth's ruling doesn't say anything about that. Because it, well, it does in that it gave us the 8.32 or 8.5 percent, so that's how that calculation was made, that 8.532 percent only I didn't infer that. I didn't infer that from the way he did it. We never made any claim for any interest in any well outside of the county that was involved in this particular case, Your Honor. And that was what Never mind. I apologize if we're, if we're confused on that point. But the point is, Your Honor, once we were, and I'll tell you what, I'll quit at five minutes because when the thing gets down to five minutes, that'll be the five minutes Well, they took off five. Oh, they did. All right. Good. So, so Partnership Accounting 101 says that a partner is entitled not only to his capital contribution, but also to net profits. And even if, even if, if they said, okay, we couldn't It speaks as of that time. Sure. It cannot speak as of the ongoing risks that are there. I mean Or the future. And he gets to, he gets his money back on a dry hold and he gets the percentage on the late, which comes later. I just, I mean, Well, and that raises the question. How could res judicata ever apply in a case in which there is a continuing relationship of the parties? You don't sue for, you don't, because the Texas law says that you don't get it both ways. You don't sue and get your money back and then, and then come back and say that because I didn't file a formal document, say the partnership is ended. No, I disagree because the difference is that, that we were suing in the first case for breach of fiduciary duty. And that was what was being awarded. Okay. You don't get both kinds of damages. You don't get both kinds of damages in a regular run of the mill contract case. The breach of fiduciary duty was failure to, to repay any profits to the, uh, to the partner. You said they weren't any profits. No, no, no. We didn't prove what the profits were. There's a big difference. The court found that there were substantial profits. The, the, the finding of fact says there were substantial profits. The partnership wells, plural, made substantial profits. Let me, let me just. We just couldn't put the dollar amount on it. Let me go back to the Texas. I found what I was looking for. Oh, good. Article 6132B-8.01. Mm-hmm. The FDA provides seven events requiring a winding up. Number one, the express will of the majority in interest. Now, I mean, is that a misquote? I, I think that's the same language that Judge Hudspeth may have referred to at some point. Mm-hmm. It's, it's the express will of the partners, Your, Your Honor. And the majority. But you're right. It's a majority of interest, uh, and that applies for all partners. You're not with a definite term or not for a definite undertaking, uh, or which the partnership does not provide for winding up of a specified event. So that's for, for most partnerships, okay? You can do it with a, with a majority in interest. But then the next question is, when do they wind it up? Winding up requires an adjustment of the capital accounts. Winding up. But, but, but, but. If the date, you filed suit in 05. Mm-hmm. The judgment, you filed suit within six months after the Texas Court of Appeals judgment became final. Mm-hmm. And you got your money. And then you immediately turn around and sue them to dissolve the partnership. Now, if that had, and at that point, they're still denying that a partnership exists. They are still denying that. Well, how is that not the same thing as the express will of the majority in interest that, that you were terminating it? Because, because if they. Because at that point, the most money you would have been able to get was any money that accrued between 04 and 05. One, one big difference there, Your Honor, and I'll make it in, in two points. One, if they're denying the partnership ever existed, they can't then also claim that the partnership exists and we're terminating it. Okay? Those are inconsistent positions. But second, the other thing that there is besides the capital contribution. You're, you're holding them to a higher standard than the court held you to on finding an oral partnership, too. No, I, I really. They didn't put you back in your same position, but anyway. Well, they didn't put us back in the same position. All that. And the effect of reversing this judgment would be to put you back in the position you were in in 05. In 05, with, with accrued partnership profits after that. But there's another thing that you have to remember. The partnership had assets. The partnership had oil and gas leases. Oil and gas leases that had substantial values. Okay? That's not profits. That's the corpus of the partnership property. When you terminate a partnership, you have to terminate the assets of the partnership. You have to value the assets of the partnership and pay them. So that's an asset that existed. I figured that you had gotten your money back according to your original investment. Period. End of story. We're divorced. But that doesn't, but that denies us the right to our capital account. Not capital contribution. Capital account. Our capital account includes more. It's simply not the law that your capital account is limited to your initial investment. Then that would have been part of the damages for breach of fiduciary duty. No. Not necessarily. Well, of course it would. Because they didn't, but you, which you just explained, they didn't distribute the profits to us. Right. They didn't give us the money. They didn't give us the profits. That's not the same as the assets. That's not the same as all the, as all the, the oil and gas leases that the partnership acquired. Okay? That's not the same as the rest of what the partnership owns. This was a breach of fiduciary duty case because they paid them their capital contribution back, but didn't pay us our capital contribution back. Okay? When they paid us our capital contribution back, the breach of fiduciary duty was healed, but the partnership was still in existence. They still had an ongoing partnership relationship. They still had the right to share in future profits after that. Even if we couldn't pay the, you know, couldn't determine what the amount of the dollars were on that particular day, on the day of trial in the state court, there were profits that accrued after that date up until the part that Judge Higginbotham terminated. Why didn't you do an injunction for that? We just wanted to terminate the partnership and get the money back. We weren't looking for an injunction to... All right. Well, I think you've had enough time. Thank you. If anybody else has any questions, I'm happy to answer them. I don't think so. Thank you. Mr. Youngblood just spent a couple minutes telling the court what applying race judicata to this case would deny a cunnatata. It denies us our right to whatever. But our system recognizes that sometimes people who don't take the proper procedural steps are going to have complaints that never get resolved by a court. Race judicata does that. So what you're saying is you should have been required to divide up the profits, the assets between you and them, but, hey, they messed up for race judicata reasons. We have all kinds of procedural devices that... Is that what you're saying, that you had these other wells and we're keeping them and they don't get a dime? I don't believe that there were any profits attributed to this partnership, as the state court found. But if there were, which I'm not conceding, yes, I think that's exactly what this means. Statutes of limitation do that. Statutes of repose do that. Notice of requirements do that. Our system recognizes these limitations on recovery because we have decided as a society that even if you might have a legitimate claim, it is your job as the plaintiff to go out there and take all of the steps that you need to do to protect it. You had your chance and you blew it is a situation that happens in courts every single day in this country. And ACUNA has not given this court any reason to believe that that result shouldn't apply to this, especially since it knew in 2001 and in 2004 that this partnership was not working and it did not want to deal with Garrison anymore. We know that it knew that because it told us that. And now it's saying, well, Garrison said there was never a partnership to begin with. Number one, the Fourth Court of Appeals in a footnote stated that Garrison's limited partner, Martin O'Neill, testified that a partnership existed. So no, their insistence that we have always said there was never a partnership is not true. The Fourth Court of Appeals said it was not. You said it in your brief. Go on. Yes, Your Honor. Anything new? I'm sorry? Anything new to say? Just as long as we're talking about wells in other counties, one of the problems with the expert reports that the trial court relied on so heavily here is that ACUNA's own experts looked at a well in Wharton County, even though Garrison and ACUNA alike both say these wells were only in Colorado County. I think that that's kind of a glaring red flag in these expert reports. And Mr. Youngblood mentioned briefly that ACUNA had some problems getting control or getting its hands on Garrison's books. But it obviously got Garrison's books at some point because its experts relied on Garrison's books to come up with their reports in this case. And Judge Higginbotham, to answer your question, unless the court has any further questions for me, I believe that I have completed my argument. Okay, thank you. Thank you, Your Honor.